## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DANIEL CARMONA ALONSO, on his behalf, and as a member of the Estate of ELISEO CARMONA SALAMAN and NAYDA CARMONA ALONSO, on her behalf, and as a member of the Estate of ELISEO CARMONAS SALAMAN | CIVIL NO.<br><br>TORT DAMAGES<br><br>TRIAL BY JURY DEMANDED |

**Plaintiffs,**

v.

BELLA VISTA HOSPITAL;
HOSPITAL BELLA VISTA DE
MAYAGUEZ; UNKNOWN DEFENDANTS
A, B, C; UNKNOWN INSURANCE
COMPANIES A, B, C

**Defendants.**

### COMPLAINT

**TO THE HONORABLE COURT:**

COMES NOW plaintiffs, through their undersigned attorneys, and very respectfully state and pray:

### I.    NATURE OF THE ACTION AND JURISDICTION

1.    This is an action to redress plaintiffs' injuries due to defendants' negligence and medical malpractice under the laws of the Commonwealth of Puerto Rico. Articles 1802 and 1803 of the Puerto Rico Civil Code. P.R. Stat. Ann., Tit. 31, §§ 5141 and § 5142.

2.    This Honorable Court has jurisdiction to entertain this action pursuant to 28 U.S.C. 1332 inasmuch all plaintiffs are citizens of different States than those of defendants

who are all citizens of the Commonwealth of Puerto Rico. The amount in controversy exceeds $75,000.00, exclusive of interests and costs, as to each plaintiff's cause of action.

3.       Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (a)(2) because the claims asserted arose in this judicial district.

4.       The facts setting forth the present claim took place on August 19, 2016. This claim tolled the one-year statute of limitations and, therefore, the instant action has been timely filed.

5.       The plaintiffs hereby request that all claims be tried before a jury.

## II.     THE PARTIES

6.       Daniel Carmona Alonso ("Daniel") is a citizen of the United States and a resident of the state of Michigan. He appears in this legal action on his behalf, and as part of the Estate of the late Eliseo Carmona Salamán ("the Estate").

7.       Nayda Carmona Alonso ("Nayda") is a citizen of the United States and a resident of Florida. She appears in this legal action on her behalf, and as part of the Estate of the late Eliseo Carmona Salamán ("Carmona").

8.       Hospital Bella Vista, Inc. a/k/a Hospital Bella Vista is an entity organized under the laws of and with its principal place of business in the Commonwealth of Puerto Rico.

9.       Unknown Defendants A, B, C are natural or juridical persons whose identity is currently unknown to plaintiffs and who may be directly and/or vicariously liable for the damages adequately caused to plaintiffs. As soon as their identities are ascertained, the complaint will be amended to include their actual names.

10.    Unknown Insurance Companies A, B, C are insurance companies which had in effect policies providing coverage to one and/or some and/or all of the defendants for actions and/or omissions such as those pleaded herein.  As such these unknown defendants may be jointly liable to plaintiffs.  Once their actual names are ascertained, the complaint will be amended as to include their real identities.

### III.    THE FACTS

11.    Eliseo Carmona Salamán (R.I.P.) was the father of both plaintiffs, Daniel and Nayda, both Carmona Alonso.  They are Carmona's only universal heirs.

12.    Eliseo Carmona Salamán ("Mr. Carmona") passed away on August 24, 2016, as a result of the defendant's negligent acts.  At the moment of his demise, he was 77 years old.

13.    Mr. Carmona had been diagnosed with a condition known as Myelodysplace Syndrome (MDS).  Common symptoms of MDS include low hemoglobin levels, fatigue, difficulty walking, diminished reflexes and weakness.

14.    As a result of Mr. Carmona's MDS diagnosis, and his low hemoglobin count related thereto, Mr. Carmona was regularly admitted to Bella Vista Hospital to receive blood transfusions in order to restore his blood count to normal levels. As part of his regular treatment plan for said condition, Mr. Carmona underwent platelet transfusions multiple times a year at Hospital Bella Vista, which made him a well-known patient among the hospital's staff.

15.    In spite of his MDS diagnosis, Mr. Carmona maintained an independent lifestyle, living on his own, enjoying an independent and normal life amongst the company of his children and grandchildren.

16.     On August 16, 2016, Mr. Carmona was admitted to Bella Vista Hospital to receive treatment for his condition of MDS. While admitted at Hospital Bella Vista, Mr. Carmona, experienced increased fatigue, difficulty walking, diminished reflexes and weakness. As a result, Mr. Carmona was at an increased risk of falling.

17.     On August 19, 2016, while still hospitalized at Hospital Bella Vista, Mr. Carmona was instructed to take a shower. Even though the nurses and medical personnel were aware of Mr. Carmona's condition, and the resulting fatigue, difficulty walking, diminished reflexes and weakness, they did not offer or provide him with assistance.

18.     Hospital Bella Vista's nursing personnel knew or should have known that Mr. Carmona's MDS diagnosis could or would lead to a heightened risk of injury resulting from his symptoms. Moreover, MDS patients who require routine platelet transfusions as part of their treatment regimen, commonly suffer from symptoms such as fatigue, difficulty walking, diminished reflexes and weakness. Considering the prevalence of these symptoms amongst patients with MDS, Hospital Bella Vista failed to implement adequate and reasonable measures to avoid accidents such as the one suffered by Mr. Carmona.

19.     As a result of a fall, which stemmed from the aforementioned commonly known symptom of MDS and the prescribed treatments, Mr. Carmona suffered severe injuries to his head, back, both arms, thorax, hips, and right leg.

20.     Following the fall, Mr. Carmona remained conscious but as a result of his injuries, he experienced excruciating pain.

21.     A CT Scan of Mr. Carmona's brain, performed on August 19, 2016 revealed he was suffering from internal bleeding, a subdural hematoma overlying the right parietal

lobe. Mr. Carmona's condition rapidly deteriorated, which required his immediate transfer to the ICU.

22.    A second CT Scan performed on Mr. Carmona on August 20, 2016, revealed the subdural hematoma located on the right side of his brain increased in size, leading to a complete overlay of the right cerebral hemisphere.

23.    On this same date, Plaintiffs were informed that, although the cerebral hematoma required surgery, due to Mr. Carmona's MSD diagnosis, he was not a candidate for surgery required to treat the injury.

24.    Mr. Carmona remained hospitalized in the ICU, suffering from excruciating pain in his head, neck, back, and hips until the time of his death on August 24, 2016.

25.    The autopsy report issued by the by the Institute of Forensic Sciences ascertains the cause of death as "severe corporal trauma." The report's findings of, but not limited to, subarachnoid hemorrhage, intraventricular hemorrhage, and contusions over multiple parts of his body support that the extensive physical trauma suffered by Mr. Carmona resulted from the fall sustained while undergoing treatment at Hospital Bella Vista.

26.    Mr. Carmona was under the care and supervision of the physicians, nurses and paramedical personnel of Hospital Bella Vista and therefore the aforementioned defendants are jointly liable to the plaintiffs for their negligent acts and omissions under the provisions of Article 1802 and 1803 of the Puerto Rico Civil Code.

27.    Mr. Carmona's death was the result of the defendants' negligent acts. But for the carelessness, errors and omissions of the hospital's nurses, Mr. Carmona's fall, the resulting injury, and ultimately the excruciatingly painful manner in which he died, would

have been avoided.  The hospital's personnel, by their tortuous and negligent actions, errors and omissions were the adequate and direct cause of Mr. Carmona's death.

28.    Hospital Bella Vista is liable for Mr. Carmona's death. By allowing its personnel to partake in substandard practices and by failing to provide Mr. Carmona with adequate support and supervision while under their care, Hospital Bella Vista failed to meet the applicable standard of care required of hospitals and their medical personnel. Furthermore, Hospital Bella Vista failed to follow standard protocols required to secure the safety and wellbeing of individual patients.

## IV.    FIRST CAUSE OF ACTION

29.    Plaintiffs repeat and re-allege each and every preceding allegation as if fully set  forth herein.

30.    All the physical damages, pain and suffering Mr. Carmona experienced from the time of his injury to the time of his demise were adequately caused by the negligence incurred by the nursing and paramedical and/or medical staff of Hospital Bella Vista and/or the unknown co-defendants, whose identities will be revealed as soon as they are identified.

31.    Hospital Bella Vista and/or defendants, as well as its medical personnel and its medical support staff, departed from the accepted standard of care and thus, failed to provide Mr. Carmona the necessary medical attention required under the circumstances.

32.    Hospital Bella Vista's failure to observe the applicable standard of care and take the required necessary safety measures, adequately caused Mr. Carmona's injuries.

33.    Hospital Bella Vista's and/or defendants' failed to follow their own protocols and as a result failed to secure the safety of its patients.  Thus, Mr. Carmona's injuries were foreseeable to a reasonably prudent person.

34.     As a result of Hospital Bella Vista's and/or defendants' negligence and that of its agents and/or employees, the defendants are fully liable to the plaintiffs for all damages suffered by Mr. Carmona under Articles 1802 and 1803 of the Civil Code of Puerto Rico.

35.     Plaintiffs Daniel and Nayda Carmona, as universal heirs, inherit the cause of action for the terrible pain and suffering that their father endured as the result of defendants' negligence, from the time of the fall and the days thereafter, until his demise.

## V.     SECOND CAUSE OF ACTION

36.     Plaintiffs repeat and re-allege each and every preceding allegation as is fully set forth herein.

37.     All the physical pain, suffering and mental anguish suffered by plaintiffs was due to the negligence incurred by Hospital Bella Vista and/or defendants, its medical personnel as well as the medical and administrative staff that was assigned to care for Mr. Carmona during his stay at Hospital Bella Vista and/or to the negligence of all defendants whose identity is currently unknown.

38.     Defendants acted negligently and carelessly and thus, are liable for failing to take measures reasonable necessary to protect Mr. Carmona from accidents such as the one he sustained.

39.     The Defendants tortious and negligent acts were the proximate and adequate cause of Mr. Carmona's fall, as well as the resulting injuries, and ultimately his death.

40.     Due to Defendants' negligence and carelessness, as previously stated, plaintiffs have been deprived of a kind and loving father, his care, comfort, protection, love and company.

41.     Furthermore, the plaintiffs suffered immense pain and suffered significant emotional distress, besieged with a feeling of impotence, unable to help their ailing father who spend his final days in excruciating pain. As a result of the aforementioned, plaintiffs have suffered and continue to suffer insurmountable emotional anguish and depression for which they should be compensated.

42.     Defendants knew or should have known that individuals like Mr. Carmona, who suffer from MSD, generally experience fatigue, difficulty walking, diminished reflexes and weakness. Thus, it was foreseeable that he could fall if left unattended.

43.     The defendants are severally and jointly liable to the plaintiffs for all damages suffered.

## VI.     DAMAGES

44.     As a result of the negligence incurred by all the defendants, Mr. Carmona suffered severe and excruciating pain and mental anguish resulting from the injuries he sustained when he fell, which continued though the time on his death on August 24, 2016. These damages are estimated in not less than $2,000,000.00.

45.     Daniel and Nayda Carmona, as universal heirs, are entitled to all compensation resulting from the suffering experienced by their father from the moment of his injury until his death on August 24, 2016, which were the proximate and adequate result of the defendants' negligence.

46.     As a result of the aforementioned facts, the plaintiffs Daniel and Nayda Carmona have suffered and continue to suffer immense damages and mental anguish, as they witnessed their father's extreme suffering during the last days of his life.  These damages are estimated in not less than $3,000,000.00.

**THEREFORE**, all premises considered, plaintiffs pray from this Honorable Court to enter judgment jointly and severally against all defendants to compensate plaintiffs in an amount not less than $5,000,000.00 as requested in this complaint, together with an award for costs and reasonable attorney's fees and any other relief this Honorable Court may deem just and proper.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 15TH day of August, 2017.

*s/Doris Quiñones-Tridas*
**DORIS QUIÑONES-TRIDAS**
USDCPR No. 202211
**QUIÑONES TRIDAS LAW OFFICE, PSC.**
1413 Ave. Fernández Juncos
Suite 3
San Juan, Puerto Rico 00909
Tel.  (787) 977-2410
Fax: (787) 977-2411
info@dqtlaw.com; dqtlaw@gmail.com